IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHOOSE LIFE OF MISSOURI, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 06-0443-CV-W-SOW |
| | ) | |
| TRISH VINCENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are plaintiffs Choose Life of Missouri, Inc., and Kevin Roach's Motion for Summary Judgment (Doc. # 32), defendant Trish Vincent's Suggestions in Opposition to plaintiffs' Motion for Summary Judgment, defendant Trish Vincent's Motion for Summary Judgment (Doc. # 34) and plaintiffs Suggestions in Opposition to defendant's Motion for Summary Judgment. Neither side filed a Reply brief. The parties have also filed a Joint Stipulation of Facts and accompanying Exhibits to the Joint Stipulation. For the reasons stated below, plaintiffs' Motion for Summary Judgment (Doc. # 32) is granted and defendant's Motion for Summary Judgment is denied (Doc. # 34).

I. Background

Plaintiff Choose Life of Missouri, Inc., is a non-profit charitable corporation, incorporated within the State of Missouri. Plaintiff Kevin Roach is the founder, president and chairman of the board of directors for Choose Life of Missouri, Inc. (hereinafter plaintiffs are collectively referred to as "Choose Life"). Defendant Trish Vincent is the Director of the Missouri Department of Revenue, which performs the ministerial task of issuing specialty license

1

plates in Missouri once approved by the Joint Committee on Transportation Oversight. The undisputed facts relevant to the pending cross-motions for summary judgment are as follows:

The State of Missouri permits individual citizens to obtain "vanity" license plates that contain a private message from the purchaser.[1] "Vanity" plates allow citizens the opportunity to craft their own message or name from available numbers and letters. Additionally, Missouri has established two different procedures for the creation of "specialty" license plates. First, the Missouri Legislature can pass a bill that creates such a plate. Currently, there are approximately seventy (70) specialty license plates with corresponding slogans that have been approved and issued through legislative enactment. The following are a few examples of specialty license plates approved through legislative enactment: Knights of Columbus (slogan "Knights of Columbus"), Grand Chapter of the Missouri Order of the Eastern Star (slogan "Harmony - Grand Eastern Star"), Grand Lodge Ancient Arabic Order or Nobles of the Mystic Shrine (slogan "Prince Hall - Missouri & Jurisdiction - Free & Accepted Masons"), Shrine Temple of the Ancient Arabic Order or Nobles of the Mystic Shrine (slogan "Shriners Help Kids"), National Association for the Advancement of Colored People (slogan "NAACP"), as well as many fraternities, sororities, professional associations and veteran organizations.

Missouri has also created a second procedure where private organizations can apply for a specialty license plate. Under Missouri law, any private organization can make an application to the Department of Revenue for a specialty license plate.[2] The application must:

(1) generally describe the proposed specialty license plate,

---

[1] *See* VAMS. § 301.144

[2] *See* VAMS § 301.3150

2

Case 4:06-cv-00443-SOW   Document 39   Filed 01/23/08   Page 2 of 16

(2) have a sponsor of at least one current member of the Missouri legislature,

(3) list at least 200 people who intend to purchase the specialty plate, if approved, and

(4) include an application fee of $5,000.

Subsequently, the Department of Revenue submits all applications to the Joint Committee on Transportation Oversight for approval[3] (hereinafter "Joint Committee"). If the Joint Committee approves the application, then the organization must submit the proposed art design no later than sixty (60) days after the approval. Neither the design nor the words in the design have to be approved by the Joint Committee once the initial application is approved. Once the Joint Committee approves the initial application, the specialty license plate must be issued within one year. The matter does not go before the Joint Committee or the General Assembly for any final approval. Specialty license plates have been approved for the following organizations: Ethan and Friends for Autism, Missouri's Cattlemen Foundation, Missouri Caves and Karst Conservancy, Missouri Support Our Troops, Inc., Arkansas Alumni Association, and Missouri Hospice Organization.

Plaintiff Choose Life submitted an application to the Missouri Department of Revenue for the issuance of a specialty "Choose Life" license plate. Neither party disputes that Choose Life fully complied with all of the statutory requirements for the issuance of the specialty license plate. Missouri state senators Joan Bray and Rita Heard Days, who both support abortion rights and who are members of the Joint Committee submitted a letter to the Chair of the Joint

---

[3]The Joint Committee decides the applications for specialty license plates by private individuals and is made up of seven senators, seven representatives, and three non-voting ex-officio members (the state auditor, the director of the oversight division of the committee of legislative research, and the commissioner of the office of administration, or the designee of such auditor, director, or commissioner).

Committee opposing the Choose Life specialty license plate application. Under the language of the statute, any application for a specialty license plate by a private organization can be denied if either five representatives or two senators submit signed petitions opposing the application or if one of the members of the Joint Committee votes against the application.[4]

On February 21, 2006, a hearing was held on Choose Life's application before the Joint Committee, along with four other applications by the following private organizations: Ethan and Friends for Autism (slogan "Understand Autism"), Missouri Cattlemen Foundation (slogan "Show Me Beef"), Missouri Caves and Karst Conservancy (slogan "The Cave State"), and Missouri Support our Troops, Inc. (slogan "Support Our Troops"). While the four other applications were approved, Choose Life's application was denied. On March 10, 2006, Choose Life appealed the denial of its application. By statute, the appeal was heard by the exact same entity that had originally denied the application - the Joint Committee. On May 9, 2006, Choose Life's appeal was denied, after the same two senators submitted a letter opposing Choose Life's application.

Both parties agree that there are no objective standards, guidelines or written criteria to govern the Joint Committee's decision regarding whether an eligible, private organization's plate design is approved. Any application can be rejected by a single vote of a Joint Committee member and no reason or explanation is required by those in opposition. Both Senators Bray and Days testified in their depositions that they are opposed to the abortion debate on license plates. Neither party disputes that Senator Bray sponsored a bill in the Senate in 2005 to create a pro-choice license plate.

---

[4] *See* VAMS 21.795(6)

II.  Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

III.  Discussion

A.  Government Speech or Private Speech

The initial issue for this Court to decide is whether specialty license plates and the specific message that is conveyed on such plates, is considered government speech or private speech.  The inquiry into government or private speech is generally dispositive, given three common assumptions: (1) that all speech is either government speech or private speech; (2) that when the government speaks for itself and is not regulating the speech of others, it may

5

discriminate based on viewpoint; and (3) that government may not discriminate based on viewpoint when it regulates private speech. Planned Parenthood of S.C., Inc. v. Rose, 361 F.3d 786, 792 (4th Cir. 2004). When the government speaks for itself, it should be afforded a great deal of latitude in choosing its message and can discriminate based on viewpoint. Id. Likewise, when the government conveys a government message, "it may take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." Rosenberger v. Rector and Visitors of Univ. of Virginia, 515 U.S. 819, 833 (1995). Private speech, in contrast, "may not favor one speaker over another." Rosenberger, 515 U.S. at 828. When dealing with private speech, "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Id.

     Defendant argues that the specialty license plates are a form of government speech in a nonpublic forum that are approved or denied through a viewpoint neutral process. The defendant argues that, since specialty license plates are government speech, the state is not required to be viewpoint neutral when it speaks for itself and it can take appropriate steps to ensure that its message is neither garbled or distorted. Plaintiff argues that when a private organization obtains a specialty license plate, the message on the plate is private speech, not government speech. Plaintiff argues that the private organization creates the message when it submits its application to the Missouri Department of Revenue and the State of Missouri does not create or vote on the message to be contained on the specialty license plate. Therefore, plaintiff contends, even if the Joint Committee had approved Choose Life's application for a specialty license plate, the message chosen by Choose Life could not be inferred as being the speech or message of the State of Missouri.

6

There is no clear standard enunciated in this circuit or by the Supreme Court for determining when the government is "speaking for itself," and, therefore, can draw viewpoint-based distinctions, and when the government is regulating private speech and cannot do so. One of the first cases to address whether specialty license plates are government or private speech was Sons of Confederate Veterans, Inc. v. Commissioner of Virginia Department of Motor Vehicles, 288 F.3d 610 (4th Cir. 2002) (hereinafter referred to as "SCV"). In this case, the descendants of Confederate army veterans sought a specialty license plate that contained the Confederate flag. In SCV, the application for a specialty license plate had to be submitted to the legislature and voted on like any other bill. The court noted that there exists some controversy over the scope of the government speech doctrine and looked to the government speech analyses from the Eighth,[5] Ninth,[6] and Tenth[7] Circuits for guidance on the issue. Id. at 618. From this, the Fourth Circuit deduced the following four-factor test:

> (1) the central 'purpose' of the program in which the speech in question occurs;
>
> (2) the degree of 'editorial control' exercised by the government or private entities over the content of the speech;
>
> (3) the identity of the 'literal speaker'; and

---

[5] Knights of the Ku Klux Klan v. Curators of the Univ. of Mo., 203 F.3d 1085 (8th Cir. 2000) (analyzing whether announcements of sponsors' names and brief messages from sponsors on public radio station constituted government speech).

[6] Downs v. Los Angeles Unified Sch. Dist., 228 F.3d 1003, 1011 (9th Cir. 2000) (analyzing whether postings to school bulletin boards were government or private speech).

[7] Wells v. City and County of Denver, 257 F.3d 1132, 1141 (10th Cir. 2001) (analyzing whether a sign listing the private sponsors of a public holiday display constituted government speech).

7

(4) whether the government or the private entity bears the 'ultimate responsibility' for the content of the speech.  Id.

Although the Fourth Circuit stated that the list of factors is not an exhaustive list, the four-factor test has been adopted by many courts.  Ultimately, after applying the four-factor test, the court in SCV found that specialty license plate sought by descendants of Confederate army veterans was private speech and determined that the government engaged in viewpoint discrimination.

As an initial matter, the defendant's argument that "all specialty license plates are government speech" is significantly contradicted by the nature of messages that are already on license plates within the state of Missouri.  For example, in order to obtain a Knights of Columbus specialty license plate, one must be a "practicing Catholic" and give a donation to this organization.  In order to obtain a Grand Lodge specialty license plate, one must be a member of this society and have a "belief in God."  To obtain a specialty license plate from the Order of the Eastern Star one must have a "belief in the existence of a Supreme Being."  Surely the state of Missouri is not endorsing these messages as their own.  The diverse nature of the organizations that currently have specialty license plates leads the Court to immediately question the defendant's argument that "all specialty license plates are government speech."

Turning to the application of the four-factor test to the present case, the Court first considers the central purpose of the program in which the speech in question occurs.  The State argues that the primary purpose of license plates is for government identification.  The plaintiff argues that the purpose of the specialty license plate program is to facilitate requests by private organizations and to by-pass the legislature.  The Court contends that both assertions are correct.  There is definitely a degree of government function with all license plates, whether they are

8

specialty, vanity or otherwise, because license plates serve the purpose of vehicle identification and the state technically owns the physical, metal plate that the message is crafted on. However, the specialty license plate program at issue also encompasses a degree of private expression and the individual citizen is giving their private endorsement of the message conveyed on their specialty license plate. The Court in Lewis, when dealing with messages on "vanity" license plates, stated that a personalized plate "is not so very different from a bumper sticker that expresses a social or political message." Lewis v. Wilson, 253 F.3d 1077, 1079 (8th Cir. 2001). "The evident purpose...is to give vent to the personality, and to reveal the character or views, of the plate's holder." Id. The specialty license plate program allows organizations to apply for a specialty license plate and express their pride in membership in a particular organization.

Next, the Court looks to the degree of editorial control exercised by the government or the private entity over the content of the speech. The State argues that an organization must meet certain requirements prior to having an application considered and, following application to the Department of Revenue, the Joint Committee maintains discretion as to whether the content is appropriate for a license plate. Plaintiff argues that there was no editorial control exercised by the government when it granted the other four applications presented to the Joint Committee on February 21, 2006, and the State has never tried to change plaintiff's message. The Court finds little in the record to suggest that the State of Missouri, specifically the Department of Revenue or the Joint Committee, asserts any "editorial control" over the content of specialty license plates. As long as a private organization complies with all requirements of the application process, as stated earlier, the application is approved or denied by the Joint Committee. The only control exercised that is identified in the statute is that "[t]he committee shall not approve any

9

application if the committee receives a signed petition from five house members or two senator that they are opposed to the approval of the proposed license plate."[8] There is nothing in the record to suggest that the State of Missouri, or the Joint Committee, maintains "editorial control" over the content or the message proposed by an applicant for a specialty license plate.

The third and fourth factors can be analyzed together. The Court must consider the identity of the literal speaker and who bears the ultimate responsibility for the content of the speech. There are strong arguments that the literal speaker implicated by a specialty license plate may be both the government and the private citizen. However, the Court agrees with the rationale of the Fourth Circuit in Planned Parenthood, that "no one who sees a specialty license plate imprinted with the phrase 'Choose Life' would doubt that the owner of that vehicle holds a pro-life viewpoint." Planned Parenthood of South Carolina Inc., 361 F.3d at 794. The literal speaker of the Choose Life message appears to be the private citizen that purchases the specialty plate and displays the plate on their vehicle. As far as who bears the ultimate responsibility for the content of the speech, the private organization who crafts the message when applying for a specialty license plate and the private individual who chooses to purchase that specialty license plate bear the ultimate responsibility for the content of the speech. Although the specialty license plate was made available through state statute, the private individual chooses to spend the money to purchase the specialty plate and display it on a vehicle. Although the Supreme Court has never specifically addressed the issue of specialty license plates, it has indicated that license plates, even when owned by the government, "implicated private speech interests because of the

---

[8]*See* VAMS 21.795(6)

connection of any message on the plate to the driver or owner of the vehicle." Wooley v. Maynard, 430 U.S. 705, 717 (1977) (holding that New Hampshire violated the First Amendment rights of objecting drivers when it required them to display the state motto "Live Free or Die" on their license plates).

Additionally, the defendant admits that on a specialty license plate an organization's name is not merely crafted from the numbers and letters in clever ways, the organization's name actually appears in place of the name of the State itself. This lends further support to the notion that it is the private citizen or organization that is the literal speaker and bears ultimate responsibility for the content of the message, not the State of Missouri. It would seem to suggest that a citizen who sees a specialty license plate on a vehicle inscribed with the phrase "Choose Life" across it would be unable to even identify which state to attribute the license plate to. This undercuts the argument that the state bears ultimate responsibility for the message on specialty license plates. After reviewing all of the factors as a whole, the resulting analysis weighs in favor of finding that specialty license plates are private speech, not government speech.[9]

---

[9]In 2005, the Supreme Court addressed the topic of government speech in Johanns v. Livestock Marketing Association, 544 U.S. 550 (2005). In Johanns, Congress passed a law that announced a federal policy of promoting the marketing and consumption of beef and beef products using funds raised by an assessment on cattle sales and importation. The Court determined that when "the government sets the overall message to be communicated and approves every word that is disseminated," it is government speech. Id. at 562. After review of Johanns and subsequent cases that have applied the Johanns test, it seems evident that the test is most appropriately applied to situations where specific messages are created through legislative enactment. In those situations, the government's actions involve much more than a mere approval process, as in this case. Congress or a state legislature specifically crafts the message to be disseminated and approves every word used. This simply does not apply to the specialty license plate program that is being challenged by plaintiff in this case because private organizations craft and submit their proposed specialty license plate. At that point, the Joint Committee either approves or denies the application. There is nothing in the record to suggest

In addition, the State contends that two years after <u>SCV</u> was decided, the Fourth Circuit reached a different conclusion after applying the four-factor test to "Choose Life" plates in <u>Planned Parenthood of South Carolina Inc. v. Rose</u>, 361 F.3d 786 (4th Cir. 2004). In <u>Planned Parenthood</u>, the court determined that the Choose Life specialty license plates were both private and government speech. <u>Id.</u> at 794. The court stated that, "[t]he State speaks by authorizing the Choose Life plate and creating the message, all to promote the pro-life point of view; the individual speaks by displaying the Choose Life plate on her vehicle." <u>Id.</u> The State argues that this case stands for the proposition that, after applying the four-factor test, "Choose Life" specialty license plates should be considered government speech. The Court disagrees. The distinguishing difference between <u>Planned Parenthood</u> and the above-captioned case is how the specialty license plate is created. In <u>Planned Parenthood</u>, the Choose Life license plate and message came about through legislative initiative that culminated in a bill, which was passed by both houses and signed into law by the Governor. In our case, Choose Life, a private organization, created its desired message and submitted its application for a "Choose Life" specialty license plate to the Department of Revenue. If the above-captioned case was before this Court as a result of legislative initiative, the foregoing analysis might have a differing result.

B. Viewpoint Neutrality

Based on the Court's foregoing determination that the speech on specialty license plates constitutes private speech, plaintiff Choose Life's First Amendment rights are implicated and the

---

that the State of Missouri, specifically the Joint Committee, sets the overall message to be communicated on an applicant's specialty license plate. As a result, the Court declines to apply the <u>Johanns</u> test as the four-factor test in <u>SCV</u> is more appropriate under the circumstances.

12

Court now turns its attention to the issue of viewpoint neutrality. A restriction on speech is constitutional only if certain principles are adhered to. To be constitutional, a restriction on speech must be specific enough that it does not delegate unbridled discretion to the government officials entrusted to enforce the regulation. City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 764 (1988). Laws that give government officials power to restrict speech, but lack specific guidelines, usually violate the First Amendment. The Constitution requires the government to "establish neutral criteria to insure that the licensing decision is not based on the content or viewpoint of the speech being considered." Id. at 760. "Where a regulation requires that a speaker receive permission to engage in speech, the official charged with granting the permission must be provided specific standards upon which to base his or her decisions." Lewis, 253 F.3d at 1080. Likewise, "[i]t is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not...by use of a statute providing a system of broad discretionary licensing power." Cox v. State of Louisiana, 379 U.S. 536, 557 (1965).

Under the law, plaintiff Choose Life is not required to show that it was denied the Choose Life license plate because of their viewpoint. "[T]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so." Lewis, 253 F.3d 1077, 1078 (8th Cir. 2001) (citing Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 133 (1992)). Therefore, plaintiff Choose Life need only show that there was nothing in the statutory language to prevent the Department of Revenue, specifically the Joint Committee, from denying the

13

application for a specialty license plate because of its pro-life viewpoint. It is sufficient that the statutory scheme lacks adequate guidelines to prevent viewpoint discrimination. The plaintiff has sufficiently met that burden. The Court sees nothing in Missouri Statute 21.795(6) that would prevent the Department of Revenue from denying Choose Life's application for a specialty license plate because of its viewpoint.

The Missouri legislature has created a system where private organizations can make an application for a specialty license plate to the Missouri Department of Revenue, who subsequently submits all applications to the Joint Committee for approval. The Missouri legislature only gave the Joint Committee authority to consider specialty license plate applications and either approve or deny those applications, regardless of the content or viewpoint of the message. It is undisputed by the parties that there are no standards or guidelines under the challenged statute controlling government officials in exercising their discretion to deny a specialty license plate request. A private organization's specialty license plate application can be denied if either (1) two senators or five representatives oppose it or (2) if a member of the Joint Committee votes against it. *See* V.A.M.S. §21.795(6). Both parties agree that no reasons have to be given for the denial. Clearly there is unbridled discretion given to the government official(s) in deciding to approve or deny a specialty license plate. The statute does not provide the Joint Committee with specific standards or guidelines upon which to base their decisions and no explanation is required for a denial of one's application. As a result, Missouri Statute 21.795(6) is unconstitutionally vague and overbroad.

This Court need not determine the specific forum present here as viewpoint discrimination is presumptively impermissible in all fora for private speech. Rosenberger, 515

U.S. at 829. It does not matter which specific forum specialty license plates fall under because, as the Eighth Circuit stated in Lewis when dealing with personalized license plates, "we need not determine precisely what kind of forum, if any, a personalized license plate is because the statute at issue is unconstitutional whatever kind of forum a license plate might be." Lewis, 253 F.3d at 1079. The same rationale can be applied in the above-captioned case with respect to specialty license plates.

The Court agrees that the topic of abortion is a politically sensitive arena and harbors some trepidation about the abortion debate on license plates. However, the proverbial door has been opened and the statute in question fails to include sufficient guidelines and safeguards to protect against viewpoint discrimination. The Court declines to rule on the issues of potential Due Process and Equal Protection violations at this time as the foregoing discussion is dispositive of the issues presented by the parties in this case.

IV. Conclusion

Accordingly, it is hereby

ORDERED that plaintiffs' Motion for Summary Judgment (Doc. # 32) is granted. It is further

ORDERED that defendant's Motion for Summary Judgment (Doc. # 34) is denied. It is further

ORDERED that the Clerk of the Court shall enter judgment in favor of the plaintiffs. It is further

ORDERED that Missouri Statute 21.795(6) is hereby deemed unconstitutional and an injunction shall be entered requiring the defendant to issue the Choose Life specialty license

plate.

                                                /s/Scott O. Wright  
                                                SCOTT O. WRIGHT  
                                                Senior United States District Judge

Dated: January 23, 2008